IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 6, 2017 Session

## CHARLES D. SPRUNGER v. CUMBERLAND COUNTY, TN SHERIFF'S OFFICE

Appeal from the Chancery Court for Cumberland County
No. 2015-CH-899      Ronald Thurman, Chancellor

_____

### No. E2016-02572-COA-R3-CV

_____

A homeowner was charged with knowingly possessing child pornography, and a forfeiture warrant was obtained to seize his house pursuant to Tenn. Code Ann. § 39-17-1008. The homeowner was ultimately convicted and sentenced to prison, and his mortgage lender foreclosed upon his house. The State filed a complaint for judicial forfeiture in an effort to enjoin the mortgage lender from disbursing any excess proceeds from the foreclosure sale to the former homeowner. The trial court granted the State the relief it requested. On appeal, the Supreme Court vacated the forfeiture of the excess proceeds because the seizing officer had failed to follow several procedural requirements in seizing the house, including giving the homeowner notice about how to contest the seizure. The former homeowner filed a complaint against the sheriff's office of Cumberland County alleging bad faith seizure and seeking damages as provided by Tenn. Code Ann. § 40-33-215. The trial court granted the County's motion for summary judgment because the record contained no evidence of any intentional misconduct by the seizing officer, and the former homeowner appealed. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Benjamin K. Raybin, Nashville, Tennessee, for the appellant, Charles D. Sprunger.

Robyn Beale Williams, Nashville, Tennessee, for the appellee, Cumberland County Sheriff's Office.

# OPINION

## I. PROCEDURAL AND FACTUAL BACKGROUND

This case involves the forfeiture of a house formerly belonging to Charles D. Sprunger. Child pornography was found on Mr. Sprunger's home computer in 2008, when Mr. Sprunger took his computer to a technician for service. John Haynes, a detective with the Cumberland County Sheriff's Department, seized the computer and obtained a search warrant for Mr. Sprunger's house. Ten months later, on May 19, 2009, Detective Haynes obtained a forfeiture warrant for Mr. Sprunger's house based on Mr. Sprunger's violation of Tenn. Code Ann. § 39-17-1004, aggravated sexual exploitation of children. Mr. Sprunger was indicted in July 2009 for violating Tenn. Code Ann. § 39-17-1003, knowingly possessing child pornography, which is a less serious offense than Tenn. Code Ann. § 39-17-1004.

On August 29, 2009, Mr. Sprunger received a "Notice of Property Seizure and Forfeiture of Conveyances," notifying him that his house had been seized. Detective Haynes failed to provide information to Mr. Sprunger about how to contest the seizure, as the law required him to do. *See* Tenn. Code Ann. § 40-33-203(c)(5). Mr. Sprunger was tried and found guilty of sexual exploitation of a minor by knowingly possessing child pornography on his home computer in violation of Tenn. Code Ann. § 39-17-1003. He was sentenced to eight years in prison.

Once the criminal court entered judgment against Mr. Sprunger, the State filed a complaint for judicial forfeiture. Mr. Sprunger's home mortgage lender had already initiated foreclosure proceedings, and the State wanted the trial court to enjoin the lender from disbursing any excess proceeds from the foreclosure sale to Mr. Sprunger. Mr. Sprunger was in prison by this time, and he responded to the State's complaint by sending a letter to the trial court in which he explained that Detective Haynes had failed to provide him with the required instructions for contesting the forfeiture of his property. The trial court granted the State the relief it requested. Mr. Sprunger's house was sold at auction the following day, and the excess funds ($31,606.26) were deposited with the chancery court clerk and master pending a final resolution of the forfeiture proceeding.

Mr. Sprunger appealed the trial court's decision, and the Court of Appeals affirmed the trial court's judgment. Mr. Sprunger sought further review by the Tennessee Supreme Court, which granted Mr. Sprunger's petition for certiorari and reversed the trial court's judgment. The Supreme Court vacated the forfeiture because the State had failed to comply with the procedural requirements set forth in the forfeiture statutes, and it ruled that the excess funds from the foreclosure sale belonged to Mr. Sprunger. *State v. Sprunger*, 458 S.W.3d 482, 500-01 (Tenn. 2015).

Following the Supreme Court's decision, Mr. Sprunger filed a Complaint for Bad Faith Seizure against the Cumberland County Sheriff's Office ("the County") pursuant to Tenn. Code Ann. § 40-33-215. Mr. Sprunger alleged that Detective Haynes failed to comply with several procedural requirements when he obtained the forfeiture warrant for his house and when he prepared and served him with the Notice of Seizure. The County filed a motion to dismiss in which it alleged Mr. Sprunger's statutory claim was barred by the statute of limitations. The trial court denied the County's motion to dismiss, but it granted the County the right to reassert the same argument for further consideration upon summary judgment.

Both Mr. Sprunger and the County filed motions for summary judgment. The trial court granted the County's motion and denied Mr. Sprunger's motion. First, the trial court addressed the County's argument that Mr. Sprunger's complaint was barred by the statute of limitations. The court held that Tenn. Code Ann. § 40-33-215 "provides for a statutory penalty in the case of a bad faith seizure," and that the applicable statute of limitations for statutory penalties is Tenn. Code Ann. § 28-3-104(a), which allows a complaint to be filed one year after the cause of action accrued.[1] The trial court then explained that "[a] claim for a bad faith seizure action accrues only after a citizen prevails in a forfeiture proceeding." Because Mr. Sprunger filed his claim for bad faith seizure within two months of the Supreme Court's ruling vacating the forfeiture, the trial court concluded that the statute of limitations did not bar Mr. Sprunger's claim and denied this aspect of the County's motion.

The trial court then ruled that Mr. Sprunger failed to meet his burden of proving the County had seized his house in bad faith because "there is not a scintilla of evidence in the record from which a trier of fact could determine intentional misconduct on the part of Detective Haynes." The court continued:

> 5. . . . The only evidence in the record before this Court is that Detective Haynes did not know Mr. Sprunger before the investigation, had no intent to injure Mr. Sprunger, and relied upon the directives of the chief law enforcement person in the district, the District Attorney's Office. Therefore, the plaintiff has failed to present any evidence to suggest that Detective

---

[1]Tennessee Code Annotated section 28-3-104(a)(1) provides:

> Except as provided in subdivision (a)(2), the following actions shall be commenced within one (1) year after the cause of action accrued:
> (A) Actions for libel, injuries to the person, false imprisonment, malicious prosecution, or breach of marriage promise;
> (B) Civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes; and
> (C) Actions for statutory penalties.

Haynes' actions were intentional, dishonest, or willful amounting to bad faith under Tenn. Code Ann. § 40-33-215.

6. The Court also finds that the court record is devoid of any evidence establishing that there was no reasonable basis in law or fact to seize the property in question. Even viewing the evidence in the light most favorable to the plaintiff, the facts are insufficient in this case to establish conduct on the part of Detective Haynes constituting bad faith. The Grand Jury of Cumberland County convened and found a true bill against Mr. Sprunger for aggravated exploitation of children. The Grand Jury found that Mr. Sprunger had approximately 1000-1200 images of small children having sex. Additionally, Mr. Sprunger was ultimately convicted of the charge of exploitation of children for possession of such images. Accordingly, the defendant affirmatively has established that there was a reasonable basis in law for the seizure of the subject property.

The trial court made "an additional and alternative finding" for purposes of determining the monetary damages Mr. Sprunger would be entitled to recover if he were successful in proving that Detective Haynes acted in bad faith.[2] Mr. Sprunger argued that he should be entitled to recover damages from the date of the forfeiture to the date the Supreme Court held that the forfeiture was improper. The trial court disagreed, however, and wrote that if he were able to prove bad faith, Mr. Sprunger would be entitled to damages calculated only from the date of the seizure, May 22, 2009, to the date of the foreclosure sale, which was October 22, 2010.

Mr. Sprunger appeals from the trial court's judgment. He argues that the trial court erred in concluding that Detective Haynes did not act in "bad faith," as that term is used in Tenn. Code Ann. § 40-33-215, because his actions had "no reasonable basis in law . . . in regards to the seizure." Tenn. Code Ann. § 40-33-215(d). He also argues that the trial court erred in determining the time period during which his house was seized for purposes of calculating damages provided by the statute.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[2]Subsection (c) of Tenn. Code Ann. § 40-33-215 provides that damages "shall be limited to the rental value of property similar to that which was seized for the period of time it was seized but in no event shall the damages exceed the value of the seized property."

judgment as a matter of law." TENN. R. CIV. P. 56.04; *see also Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 261-62 (Tenn. 2015) (quoting TENN. R. CIV. P. 56.04). Appellate courts review a trial court's decision on a motion for summary judgment de novo, with no presumption of correctness. *Rye*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Courts ruling on motions for summary judgment are required to construe the evidence "in the light most favorable to the nonmoving party" and to "resolve all inferences in the nonmoving party's favor." *Rains v. Bend of the River*, 124 S.W.3d 580, 587 (Tenn. Ct. App. 2003) (citing *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 342 (Tenn. 2002)).

If a party moving for summary judgment does not bear the burden of proof at trial, it will be entitled to succeed on its motion if it:

> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101; *see Eden W. ex rel. Evans v. Tarr*, No. M2014-01491-COA-R3-CV, 2015 WL 2210155, at *2 (Tenn. Ct. App. May 8, 2015) (writing that defendant moving for summary judgment must either negate an essential element of the plaintiff's claim or prove an affirmative defense that defeats the plaintiff's claim) (citing *Doyle v. Town of Oakland*, No. W2013-02078-COA-R3-CV, 2014 WL 3734971, at *2 (Tenn. Ct. App. July 28, 2014)). Once a moving party satisfies these requirements, the nonmoving party "must demonstrate how these requirements have not been satisfied." *Rains*, 124 S.W.3d at 587 (citing *Bain*, 936 S.W.2d at 622). "[T]he nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Rye*, 477 S.W.3d at 265 (quoting TENN. R. CIV. P. 56.06).

### B. Statute of Limitations

The County argues on appeal that the trial court erred when ruling on its motion for summary judgment that Mr. Sprunger filed his bad faith seizure claim within the time period allowed by the applicable statute of limitations. Mr. Sprunger contends that the County has waived this argument on appeal because it failed to identify this argument as an issue on appeal in its brief. As Mr. Sprunger correctly points out, the Tennessee Rules of Appellate Procedure provide that if an appellee is requesting relief from the judgment being appealed, the appellee's brief "shall contain the issues and arguments involved in

[its] request for relief as well as the answer to the brief of appellant." TENN. R. APP. P. 27(b). However, in the section of its brief entitled "Statement of the Issues on Appeal," the County identifies just one issue: "Whether the trial court erred in granting summary judgment to the Defendant in this case."

The Tennessee Supreme Court has addressed the requirements of Tenn. R. App. 27(b) and has written:

> Appellees who have not filed a notice of appeal . . . have three options with regard to framing the issues on appeal. First, they may simply accept the issues as framed by the appellant. Second, they may reframe the issues presented by the appellant if they find the appellant's formulation of the issues unsatisfactory. Third, they may present additional issues of their own seeking relief on grounds different than the grounds relied on by the appellant . . . .

*Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (footnotes omitted). "Appellate review is generally limited to the issues that have been presented for review," and "[t]he issues should be framed as specifically as the nature of the error will permit in order to avoid any potential risk of waiver." *Id.* at 334, 335.

The *Hodge* Court stated that "an issue may be deemed waived when it is argued in the brief but is not designated as an issue" as required by the Tennessee Rules of Appellate Procedure. *Id.*; *see Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) ("We may consider an issue waived where it is argued in the brief but not designated as an issue."); *Childress v. Union Realty Co., Ltd.* 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("[W]hen a party raises an issue in its brief, but fails to address it in the argument section of the brief, we consider the issue to be waived."); *see also Lovlace v. Copley*, 418 S.W.3d 1, 17 n.6 (Tenn. 2013); *State v. Hayes*, 894 S.W.2d 298, 300 (Tenn. Crim. App. 1994).

Mr. Sprunger's brief raised issues regarding bad faith, damages and an award of attorney's fees and costs. Therefore, it was incumbent upon the County to raise the statute of limitations as an issue if the County wanted the appellate court to address it. Claiming that the trial court erred in granting summary judgment does not provide the specificity that the Tennessee Rule of Appellate Procedure 27 envisions. Thus, because the County failed to comply with the mandates of Tenn. R. App. P. 27(b) by specifically designating the trial court's statute of limitations ruling as an issue, the County has waived this argument on appeal.[3]

---

[3] We recognize that sometimes appellate courts exercise their discretion to consider issues not so designated in a brief. *See Ramirez v. Bridgestone/Firestone, Inc.*, 414 S.W.3d 707, 716 (Tenn. Ct. App. 2013). Had we addressed the issue, we would have affirmed the trial court.

C.  Bad Faith Seizure

Mr. Sprunger's bad faith seizure claim is based on Tenn. Code Ann. § 40-33-215, which provides as follows:

(a) A person who has property seized in accordance with this part shall have a cause of action against the seizing agency if the seizing officer acted in bad faith in seizing or failing to return property seized pursuant to this part.

(b) A person who prevails in an action against a seizing agency pursuant to this section shall be entitled to:

(1) Reasonable attorney fees and court costs necessarily incurred in seeking the return of the seized property and in bringing the action pursuant to this section; and

(2) Monetary damages resulting from the improper seizure of the property.

(c) Monetary damages recoverable under this section shall be limited to the rental value of property similar to that which was seized for the period of time it was seized but in no event shall the damages exceed the value of the seized property.

(d) For the purposes of this section, a seizing officer "acts in bad faith" when the officer acts intentionally, dishonestly, or willfully or the officer's actions have no reasonable basis in law or fact in regards to the seizure or failure to return the property seized.

Addressing the first part of subsection (d) of the statute, the trial court found that "the plaintiff . . . failed to present any evidence to suggest that Detective Haynes' actions were intentional, dishonest, or willful amounting to bad faith under Tenn. Code Ann. § 40-33-215." Mr. Sprunger does not contest this portion of the trial court's judgment. He contends, however, that the trial court erred by failing to find bad faith pursuant to the second part of subsection (d) of the statute. He argues that the seizing officer acted in bad faith when he seized Mr. Sprunger's house because the officer's actions "lacked a reasonable basis in the law." Mr. Sprunger asserts that Detective Haynes' actions had no reasonable basis in law "because the officer failed to follow several clear, unequivocal, statutory requirements." Mr. Sprunger relies on the procedural deficiencies that led the Supreme Court to vacate the judicial forfeiture[4] to show that the officer's acts lacked a

_____

[4]The procedural deficiencies Mr. Sprunger identified include the officer's failure to prepare a receipt for the seizure "[u]pon effecting [the] seizure" (Tenn. Code Ann. § 40-33-203(a)); failure to provide notice of the reason the officer believed the property was subject to seizure and forfeiture (Tenn. Code Ann. § 40-

reasonable basis in the law and were, therefore, done in "bad faith," as that phrase is used in the statute. We are not persuaded by Mr. Sprunger's argument.

In its opinion vacating the forfeiture of Mr. Sprunger's house, the Supreme Court noted that forfeiture is not favored in Tennessee and that "'statutes authorizing forfeitures are to be strictly construed.'" *Sprunger*, 458 S.W.3d at 494 (quoting *Watson v. Tenn. Dep't of Safety*, 361 S.W.3d 549, 555 (Tenn. Ct. App. 2011)). The Court wrote that "'[o]ne of the essential elements of due process in the confiscation and forfeiture of private property is adequate notice to all interested parties.'" *Id.* (quoting *Redd v. Tenn. Dep't of Safety*, 895 S.W.2d 332, 335 (Tenn. 1995)). Mr. Sprunger relies on this language to argue that by failing to provide the statutorily mandated notices to Mr. Sprunger when his house was seized, Detective Haynes' conduct necessarily lacked any reasonable basis. We agree with Mr. Sprunger that Detective Haynes acted improperly by failing to provide Mr. Sprunger with the notices described in the statute. However, it does not necessarily follow that Detective Haynes' procedurally defective seizure "lacked any reasonable basis."

To decide whether Mr. Sprunger has a bad faith claim against the County for its officer's failure to follow the proper procedure in seizing Mr. Sprunger's house, we must determine whether Detective Haynes had "no reasonable basis in law or fact in regards to the seizure." Tenn. Code Ann. § 40-33-215(d). Statutory construction is a question of law that we review de novo on appeal. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). When interpreting a statute, "[o]ur primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." *Id.* (citing *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002)); *see also Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). If a statute is ambiguous, we may consider the legislative history as an aid in our interpretation. *In re Estate of Tanner*, 295 S.W.3d at 614; *see also Parks*, 974 S.W.2d at 679; *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

The legislative history in this case shows that the motivation for enacting the statute was to reign in police officers who were overzealous in seizing automobiles that did not belong to the perpetrators. The proponents of the bill did not explain the meaning of "bad faith," but they indicated the meaning was the same as that used in the insurance code and workers' compensation laws.[5]

---

33-203(c)(4)); failure to provide notice about the consequences of failing to file a timely claim for recovery (Tenn. Code Ann. § 40-33-203(c)(6)); failure to conduct and record an ex parte hearing (Tenn. Code Ann. § 40-33-204(b)); failure to send the warrant or notice to an administrative agency within seven days of issuance (Tenn. Code Ann. § 40-33-204(g)); and failure by an administrative agency to set and conduct a hearing (Tenn. Code Ann. §§ 40-33-207, -210).

[5] House Floor discussion of HB 2409 at 26:32, 100th Gen. Assembly, remarks of Representative Frank Buck, April 1, 1998.

Mr. Sprunger contends that neither the insurance statutes nor the workers' compensation laws that reference bad faith require a showing of malicious intent. Although Mr. Sprunger may be correct that bad faith in these contexts does not require proof of malice, the conduct complained of must include some degree of knowing misconduct or indifference. Mr. Sprunger relies for support on *Johnson v. Tennessee Farmers Mutual Insurance Company*, 205 S.W.3d 365 (Tenn. 2006), and *Building Materials Corporation v. Coleman*, No. M2004-01829-WC-R3-CV, 2005 WL 3147658 (Tenn. Workers' Comp. Panel Nov. 28, 2005). In the first case, the plaintiff/insured's insurance company refused to settle a claim made against the plaintiff for the policy limits, resulting in a jury verdict against the insured for nearly four times the amount of the policy limits. *Johnson*, 205 S.W.3d at 369. The insured sued his insurance company, alleging it acted in bad faith in failing to investigate and settle his claim adequately. *Id.* The Supreme Court discussed the meaning of bad faith in this context, writing:

> Bad faith refusal to settle is defined, in part, as an insurer's disregard or demonstrable indifference toward the interests of its insured. This indifference may be proved circumstantially. Bad faith on the part of the insurer can be proved by facts that tend to show "a willingness on the part of the insurer to gamble with the insured's money in an attempt to save its own money or any intentional disregard of the financial interests of the plaintiff in the hope of escaping full liability imposed upon it by its policy."

*Id*. at 370 (citations omitted). The Court explained that "[m]ere negligence is not sufficient to impose liability for failure to settle," *id.* at 371 (citing *S. Fire & Cas. Co. v. Norris*, 250 S.W.2d 785, 792 (Tenn. Ct. App. 1952)), and that "an insurer's mistaken judgment is not bad faith if it was made honestly and followed an investigation performed with ordinary care and diligence," *id.* (citing *Perry v. U.S. Fid. & Guar. Co.*, 359 S.W.2d 1, 7 (Tenn. Ct. App. 1962)).

In the workers' compensation context, bad faith has been likened to "fraud or wrongfulness." *Coleman*, 2005 WL 3147658, at \*5 (citing *Hale v. Commercial Union Assurance Cos*., 637 S.W.2d 865, 869 (Tenn.1982)). The employer in *Coleman* denied Mr. Coleman's claim for workers' compensation, and one issue in the case was whether the denial was made in bad faith. *Id*. at \*1-2. Addressing what it means for an employer to deny a workers' compensation claim in bad faith, the *Coleman* panel wrote:

> To deny an insurance claim without a factual basis for doing so and to subsequently misrepresent the reasons for the denial is bad faith. This action is a departure from the ordinary care and diligence that our case law holds is required of an insurer when handling an insured's claim. The denial here reaches beyond an honest but mistaken judgment; it represents an unfounded and arbitrary decision made without a full investigation.

*Id.* at *5 (citation omitted); *see Lindenburg v. Jackson Nat'l Life Ins. Co.*, 147 F. Supp. 3d 694, 701 n.1 (W.D. Tenn. 2015) (stating plaintiff must show insurer failed to act in "good faith" when refusing to pay claim in order to prevail on complaint alleging bad faith); *The Heil Co. v. Evanston Ins. Co.*, No. 1:08-cv-244, 2014 WL 11395157, at *6-7 (E.D. Tenn. Mar. 21, 2014) ("Bad faith refusal to settle is defined, in part, as an insurer's disregard or demonstrable indifference toward the interests of its insured.") (quoting *Johnson*, 205 S.W.3d at 370).

As these cases show, bad faith in the insurance and workers' compensation environments requires a level of knowledge or indifference that amounts to wrongful conduct. In contrast to the situations in *Johnson* and *Coleman*, the trial court here found Detective Haynes did not engage in "intentional misconduct" in an effort to deprive Mr. Sprunger wrongfully of his property and even relied on advice from the District Attorney's Office. Mr. Sprunger does not challenge this finding. We note that Mr. Sprunger does not argue that his house was not subject to being seized. Rather, he argues only that the seizing officer's conduct had no reasonable basis in law or fact **because** the officer failed to comply with the procedural requirements when the seizure was effected. The cases Mr. Sprunger cites reveal that there must be some proof of knowing misconduct or indifference before a court will make a finding of bad faith. He points us to no cases in the insurance or workers' compensation context that require anything less for a finding of bad faith, and we are not aware of any such cases. We conclude that for purposes of Tenn. Code Ann. § 40-33-215, Detective Haynes did not act in bad faith when he seized Mr. Sprunger's house. In light of our holding that Mr. Sprunger has not proved bad faith on the part of Detective Haynes, we need not address Mr. Sprunger's argument regarding the calculation of damages.

### III. CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal shall be taxed to the appellant, Charles D. Sprunger, for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE